UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARLOS M. HARLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 18-2633 (RBW) |
| COVINGTON AND BURLING, LLC, | ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM OPINION

In this action brought *pro se*, the plaintiff, Carlos M. Harley, sues his former employer, Covington and Burling, LLC ("Covington"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-2 to -17 (2012), alleging that he was wrongfully terminated by Covington.[1] *See* Complaint ("Compl.") at 1, ECF No. 1. And, although the plaintiff does not explicitly assert a common law claim of wrongful termination, the Court will assume that as a *pro se* litigant, he has done so. He seeks $3.5 million for "pain and suffering related to [his] injuries" presumably resulting both from his termination and the event that led to his termination. *Id*.

Currently pending before the Court is the defendant's Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 8. The plaintiff has countered with a

---

[1] In an "Addendum to Complaint," ECF No. 3, the plaintiff requests information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. However, the FOIA does not apply to private defendants; therefore, any such claim is dismissed. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (noting that the "district court properly dismissed the named individual defendants because no cause of action exists that would entitle appellant to relief from them under the . . . FOIA"); 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring the Court to immediately dismiss a complaint that fails to state a claim upon which relief may be granted).

"Request for Court Continuation," ECF No. 13, which the Court construes as his opposition, and the defendant has filed a Reply Brief in Support of Motion to Dismiss, ECF No. 15.  Upon consideration of the parties' submissions, and for the reasons explained below, the defendant's motion will be granted.

## I.  BACKGROUND

### A.  Factual Allegations

The plaintiff asserts the following allegations.  He is an African American, and was employed as a Security Officer by Covington at its Washington, D.C. office, from May 2017 to March 2018.  Compl. at 1.[2]  The plaintiff contends that on March 16, 2018, he "was physically assaulted" by his direct supervisor, Security Supervisor Derek New ("New"), a Caucasian, in Covington's parking garage, and sustained "injuries to [his] neck, ankle and body[.]"  *Id*. at 1; *see* Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem.") at 2, ECF No. 9.

On December 14, 2017, three months "[p]rior to this physical attack," the plaintiff "made complaints" to Covington's Human Resources Manager, Nisa Walls ("Walls"), "concerning being harassed and intimidated with threats of termination by Supervisor [ ] New."  Compl. at 1.  Specifically, the plaintiff contends that on December 13, 2017, "after [his] shift [ended]," he and New angrily disagreed about whether the plaintiff had removed "papers . . . from the printers."  *Id.* at 2.  When the plaintiff replied that he had removed the papers during his patrol, New "became irate and stood close to [the plaintiff] in an intimidating fashion[.]"  *Id*.  New allegedly said to the plaintiff, among other things, that the plaintiff was "going to get written up," which the plaintiff took as an attempt "to bait" him into losing his temper "so that [he] could be written

---

[2]  The page citations are those assigned by the Court's electronic case filing system.

up for 'gross insubordination' and . . . easily terminated." *Id*.  The plaintiff instead "walked out [ ] [of] the building and contacted" Walls the next day.  *Id*.  The plaintiff complained to Walls about "unfounded" accusations about him "not doing [his] job" and "several racial remarks" made to him by a former employee and "[o]n a separate occasion [by] Supervisor New."  *Id*.

In January 2018, the plaintiff again "spoke with" Walls "concerning [his] complaint."  *Id.*  Walls "said [that] she [had] met with Supervisor New on December 22, 2017, and "made [him] aware [that] he could not retaliate against [the plaintiff] in light of [the plaintiff] bringing forth [his] complaint to [Human Resources]."  *Id*.

On March 6, 2018, the plaintiff met "with Manager Michael Lamb," who told the plaintiff that "several employees," whom Lamb did not identify, had stated that the plaintiff "was going around the building spreading the rumor that Supervisor New is a racist."  *Id.* at 2.  On March 16, 2018, the plaintiff "was on [his] last patrol of the morning," walking through the garage when New "drove down the control ramp to park."  *Id*.  New rolled down his window and allegedly asked the plaintiff "Why are you going around telling people I'm a racist[?]"  *Id*.  The plaintiff denied that he had called New a racist, but New nonetheless parked and exited his vehicle, began "cussing and continually" calling the plaintiff "a liar" and threatening that his "time with the company was short."  *Id.*  Eventually, New "threw a punch at [the plaintiff] and wrapped his arms around [the plaintiff's] neck trying to wrestle [him] to the ground."  *Id*.  The plaintiff "g[o]t [New] off [of him] . . . and [the plaintiff] refer[red] [ ] [New] to cameras and said" that he was "going to call the police."  *Id*.  The plaintiff then "immediately walked upstairs and called [the Metropolitan Police Department][.]"  *Id*.  New also "went upstairs [acting] like nothing had happened[[.]"  *Id*.

**B. Disciplinary Action and Termination**

In separate Memorandums dated March 22, 2018, both the plaintiff and New were recommended for immediate termination of their employment. *See* Compl., Exhibit ("Ex.") D (Recommendation for Termination – Haley, Carlos at 30-33); Ex. E (Recommendation for Termination – New, Derek at 11-14). In each Memorandum, both were faulted for engaging "in physical conduct toward the other." *Id.*, Ex. D at 32; *see id.,* Ex. E at 13 ("[B]oth employees admitted [to] participating in a verbal exchange followed by a physical altercation, followed by additional heated exchange. That evening both employees were notified and placed on paid suspension pending further investigation."). The plaintiff and New "were discharged the next day," on March 23, 2018. Def.'s Mem. at 3 (citing Def.'s Mem., Ex. 1 ("Charge of Discrimination")).

New's conduct was viewed as "violat[ing] the firm's expectations of employees and managers." Compl., Ex. E at 14. The defendant concluded that New's "statements toward [the plaintiff] . . . were threatening and made in retaliation for [the plaintiff] having made a complaint about New's treatment of him and statements toward him[,]" despite having been "cautioned not to engage in any retaliatory conduct toward Harley." *Id*.

The plaintiff's conduct was viewed as a demonstration of "poor judgment" as an "entrusted . . . security officer." *Id.,* Ex. D at 33. The plaintiff's immediate termination was recommended because:

> He did not apparently make an attempt to avoid the confrontation but instead played a role in provoking it by following New to his car to confront him. He did not appear fearful, calling into question the veracity of his statement that New started the physical altercation, and he continued to engage in a heated verbal exchange following the altercation. He has already been warned about other aspects of his performance; this conduct

> further exemplifies his inability to perform to the expectations required of his role.

*Id.,* Ex. D at 33.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States,* 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations," or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint." *Hettinga,* 677 F.3d at 476. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the . . . [C]ourt to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C. Cir. 1997). "[A] document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint[,]" *Strumsky v. Washington Post Co.,* 842 F. Supp. 2d 215, 218 (D.D.C. 2012) (citation omitted), and "where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion [to dismiss] to one for summary judgment[,]" as required by Rule 12(d). *Vanover v. Hantman,* 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd,* 38 Fed. App'x. 4 (D.C. Cir. 2002) (citation omitted).

**B.    *Pro Se* Filings**

In applying the framework above, the Court must be mindful of the fact that the plaintiff is proceeding in this matter *pro se*. This appreciation is required because the pleadings of *pro se* parties are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by a *pro se* litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). Nonetheless, "a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the [C]ourt." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

### III.  ANALYSIS

**A.     Title VII**

Title VII protects employees from retaliation on the basis of having "opposed any practice made an unlawful employment practice by [Title VII], or . . . [having] made a charge . . . under [Title VII]."  42 U.S.C. § 2000e–3(a).  A plaintiff establishes "a prima facie case of retaliation by showing (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two."  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (citation omitted).  The "scope of [Title VII's] anti-retaliation provision [may] extend[ ] beyond workplace-related or employment-related retaliatory acts and harm[.]"  *Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

To survive the defendant's motion to dismiss, the plaintiff's factual allegations must show that "the [decision-maker] had knowledge of [his] protected activity, and . . . the adverse personnel action took place shortly after that activity."  *Holcomb v. Powell,* 433 F.3d 889, 903 (D.C. Cir. 2006) (third alteration in original).  It is without question that the decision-maker knew about the plaintiff's prior protected activity and that the plaintiff's employment was terminated thereafter.  The defendant argues, however, that the Complaint fails on the third element of causation (1) because of the nearly three-month interval between the plaintiff's protected activity in December 2017 and his termination in March 2018, and (2) because of the intervening event of the plaintiff's altercation with New.  *See* Def.'s Mem. at 4-8.  The Court agrees.

"[T]emporal proximity can indeed support an inference of causation, but only where the two events are very close in time."  *Hamilton v. Geithner,* 666 F.3d 1344, 1357 (D.C. Cir. 2012)

(quoting *Woodruff v. Peters,* 482 F.3d 521, 529 (D.C. Cir. 2007)).  And, "[w]hile courts have not definitively 'established the maximum time lapse between protected Title VII activity and alleged retaliatory actions,' action which occurs more than three months after the protected activity is not likely to qualify for such a causal inference."  *Massaquoi v. District of Columbia,* 285 F. Supp. 3d 82, 89 (D.D.C. 2018) (Walton, J.) (citing *Williams v. Spencer,* 883 F. Supp. 2d 165, 178 (D.D.C. 2012) (other citation omitted); *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close[.]") (internal quotation marks and citations omitted)); *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (finding "an inference of retaliatory motive based upon the 'mere proximity' in time between Taylor's filing her first suit and the AWOL listing two and one-half months later [to] be untenable").  Temporal proximity is therefore not a basis for inferring causation in this case.

   The plaintiff's claim also fails because the reason for his and New's immediate termination had nothing to do with his protected activity and everything to do with his altercation in the parking garage, which the defendant promptly investigated and concluded constituted grounds for the plaintiff's termination.  *See* Compl., Exs. D and E; *cf. Duncan v. Johnson,* 213 F. Supp. 3d 161, 188 (D.D.C. 2016) (finding the plaintiff's "unexcused absence" on the completion date of an assigned project to be a "significant intervening event" that provided a legitimate, nondiscriminatory reason for three-day suspension occurring "approximately a month and a half" after the protected activity); *Placide-Eugene v. Visiting Nurse Serv. of New York,* 86 F. Supp. 3d 132, 150 (E.D.N.Y. 2015) (citing cases where an intervening event defeated the "prima facie

8

case of unlawful retaliation") (internal quotation marks and citation omitted)). The fact that New was terminated for the same encounter and also for failing to follow the Human Resources supervisor's directive *not* to retaliate against the plaintiff for his complaints to Human Resources, *see* Compl., Ex. E at 14, further undermines the plaintiff's retaliatory discharge claim. This is because unlike "status-based" Title VII claims where the employer's discriminatory motive suffices, *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013), Title VII retaliation claims require more stringent "proof" that the unlawful retaliation would not have occurred "but for . . . the alleged wrongful action or actions of the employer." *Id.* at 360. In other words, the employer's "desire to retaliate" must be "the but-for cause of the challenged employment action." *Id*. at 352 (citation omitted). In this case, the employer's documented actions establish no such connection. The plaintiff's Title VII claim is therefore dismissed.

**B.     Wrongful Termination**

The plaintiff has not specifically asserted separate counts differentiating his Title VII claim from his common law claim of wrongful termination. Nonetheless, to the extent that he has sought to plead a wrongful termination claim, it is "long . . . settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 30 (D.C. 1991). However, there is "a public policy exception to the general rule that an at-will employee may not sue a former employer in tort for wrongful discharge." *Id.* at 33. But in order for an at-will employee "to prevail on a claim for wrongful termination, the plaintiff must show that [his] termination violated an articulated public policy." *Chisholm v. District of Columbia,* 533 F. Supp. 2d 175, 180 (D.D.C. 2008) (Walton, J.) (citing *Adams,* 597 A.2d at 33).

As noted earlier, the plaintiff has not specifically pleaded a wrongful termination claim. But if it was his intent to do so, in the District of Columbia, employees are presumed to be at-will employees, *see id*. at 179, n.2 (citing cases), and the plaintiff has not alleged any facts to rebut that presumption, nor has he raised any public policy that was violated by his termination. Therefore, even if the plaintiff intended to plead a common law claim of wrongful termination, any such claim must be dismissed as well, albeit without prejudice to the plaintiff pursuing any such claim in the Superior Court of the District of Columbia if there is a legal basis for doing so.

**C.    Claim for Monetary Relief**

The plaintiff's claim for $3.5 million in damages is presumably "for all pain and suffering related to [the] injuries" to his "neck, ankle and body" when he "was physically assaulted by . . . New[.]" Compl. at 1. The defendant argues correctly that this claim is barred by the District of Columbia's Workers' Compensation Act ("WCA"), D.C. Code §§ 32-1501–1545 (2018). See Def's Mem. at 8-9.

"The WCA . . . covers, in pertinent part, an injury to an employee 'that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury[,]'" and "the compensation provided under this law 'shall constitute the employee's exclusive remedy against the employer[.]'" *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 116 (D.D.C. 2012) (quoting D.C. Code §§ 32–1503(a)(1) and 1504(b)). Moreover, "even intentional torts occurring at the workplace and committed by other employees . . . fall[ ] within the scope of the WCA," *id.,* "so long as the employer did not intend [the] . . . actions." *Vanzant v. Washington Metro. Area Transit Auth.,* 557 F. Supp. 2d 113, 117 (D.D.C. 2008); *see Grillo v. Nat'l Bank of Washington,* 540 A.2d 743, 744 (D.C. 1988) (holding that "only injuries

specifically intended by the employer to be inflicted on the particular employee who is injured fall outside of the exclusivity provisions of the WCA").

Here, the plaintiff's alleged injuries occurred at his employer's parking garage in the District of Columbia while he "was on [his] last patrol of the morning[.]"  Compl. at 2.  Therefore, the plaintiff's remedy for the alleged injuries falls exclusively under the WCA, and this claim is dismissed without prejudice because this Court lacks jurisdiction over the claim.

## CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff has failed to state a Title VII claim of retaliatory discharge and a common law claim of wrongful termination.  In addition, the plaintiff's claim for monetary relief, based on his alleged injuries that occurred during his confrontation with Derek New, is foreclosed by the D.C. Workers' Compensation Act.  Consequently, the defendant's motion to dismiss under Rule 12(b)(6) is granted.[3]

DATE:  May 15, 2020

_____s/_____
Reggie B. Walton
United States District Judge

---

[3]  A separate order accompanies this Memorandum Opinion.